# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| EARNESTINE HOLLINSHED o/b/o M.J., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:08CV165 CAS(LMB) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is a proceeding under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the application of Earnestine Hollinshed for Supplemental Security Income benefits on behalf of her grandson, M.J., under Title XVI of the Social Security Act. This case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 42 U.S.C. § 636(b). Plaintiff has filed a Brief in Support of Complaint. (Document Number 14 ). Defendant has filed a Brief in Support of the Answer (Doc. No. 19). Plaintiff has also filed a Reply. (Doc. No. 20).

## Procedural History

Earnestine Hollinshed filed an application for Supplemental Security Income (SSI) benefits on behalf of her grandson, M.J. ("plaintiff") on January 23, 2006. (Tr. 33-38). The application was denied initially and, following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated August 29, 2007. (Tr. 9-23). Ms.

Hollinshed thereafter filed a request for review with the Appeals Council of the Social Security Administration (SSA), which was denied on December 3, 2007. (Tr. 5, 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

**Evidence Before the ALJ**

**A.     ALJ Hearing**

Plaintiff's administrative hearing was held on August 8, 2007. (Tr. 26). Plaintiff and Ms. Hollinshed were present at the hearing. (Id.). Plaintiff was not represented by counsel. (Id.).

Ms. Hollinshed stated that she was plaintiff's grandmother and legal guardian. (Id.). Ms. Hollinshed indicated that she filed plaintiff's application for disability benefits. (Id.). Ms. Hollinshed stated that she received a letter from the SSA indicating that she could be represented by an attorney if she wanted one. (Id.). Ms. Hollinshed stated that she read and understood the letter. (Id.). Ms. Hollinshed indicated that she wished to proceed with the hearing without an attorney. (Tr. 27).

The ALJ then examined Ms. Hollinshed, who testified that she requested disability benefits on behalf of plaintiff because plaintiff has a lot of issues. (Id.). Ms. Hollinshed stated that plaintiff has problems at school and that plaintiff has Attention Deficit/Hyperactivity Disorder (ADHD).[1] (Id.). Ms. Hollinshed testified that plaintiff takes medication daily for ADHD. (Id.). Ms.

---

[1]ADHD is a behavioral disorder manifested by developmentally inappropriate degrees of inattentiveness (short attention span, distractability, inability to complete tasks, difficulty in following directions), impulsiveness (acting without due reflection), and hyperactivity (restlessness, fidgeting, squirming, excessive loquacity). Stedman's Medical Dictionary, 568 (28th Ed. 2006).

Hollinshed stated that the medication calms plaintiff somewhat. (Id.).

Ms. Hollinshed testified that plaintiff also has problems due to his weight. (Id.). Ms. Hollinshed stated that plaintiff is eleven years old and weighs 226 pounds. (Id.). Ms. Hollinshed testified that plaintiff is five-feet five-inches tall. (Id.). Ms. Hollinshed stated that the kids at school tease plaintiff due to his weight. (Id.).

Ms. Hollinshed testified that plaintiff was starting the fifth grade at the time of the hearing, although he is a year behind. (Tr. 28). Ms. Hollinshed stated that plaintiff should be entering the sixth grade. (Id.).

Ms. Hollinshed testified that she has had custody of plaintiff for three years. (Id.). Ms. Hollinshed stated that she needs help with plaintiff. (Id.). Ms. Hollinshed repeatedly scolded plaintiff during the hearing. (Id.).

Ms. Hollinshed testified that she takes plaintiff to a psychiatrist at Grace Hill. (Id.). Ms. Hollinshed stated that plaintiff sees a regular doctor and a psychiatrist every time he goes to Grace Hill. (Id.). Ms. Hollinshed testified that plaintiff sees the psychiatrist about once a month. (Id.). Ms. Hollinshed stated that plaintiff discusses his problems with his psychiatrist every month. (Id.). Ms. Hollinshed testified that both of plaintiff's parents are in prison. (Id.). Ms. Hollinshed stated that plaintiff's psychiatrist has not yet suggested that plaintiff be admitted to a psychiatric hospital. (Tr. 29). The ALJ noted that psychiatric hospitalizations can help young people "decide they want to go in a certain direction." (Id.).

The ALJ next examined plaintiff, who testified that his favorite part of school was "playing," and his least favorite part of school was "work." (Id.). The ALJ then discussed with

plaintiff the importance of working to earn a living and buy material things. (Tr. 29-30). Plaintiff indicated that he would like to own a car rather then ride the bus his whole life. (Id.). The ALJ advised plaintiff to work in school and to be nice to his grandmother. (Tr. 30).

The ALJ then re-examined Ms. Hollinshed, who testified that plaintiff is also being treated for asthma. (Id.). Ms. Hollinshed stated that plaintiff has used a nebulizer in the past and he now uses an inhaler. (Tr. 30-31). Ms. Hollinshed indicated that plaintiff's weight does not help his asthma. (Tr. 31). Ms. Hollinshed stated that the kids at school make fun of plaintiff due to his weight. (Id.). The ALJ noted that plaintiff is larger than Ms. Hollinshed. (Id.).

Ms. Hollinshed testified that plaintiff acts out a lot. (Id.). Ms. Hollinshed stated that plaintiff was acting out during the hearing. (Id.). Ms. Hollinshed noted that plaintiff was moving around and laughing during the hearing. (Id.).

The ALJ informed Ms. Hollinshed that a decision would be mailed to her home address in about sixty days. (Id.). The ALJ advised Ms. Hollinshed to read the decision and informed her of her right to appeal within a specific time frame. (Id.). The ALJ stated that Ms. Hollinshed could take the decision to her local SSA office if she had difficulty understanding it. (Id.). The ALJ indicated that the local SSA office would help Ms. Hollinshed understand the decision. (Tr. 32).

**B.    Relevant Medical Records**

Plaintiff saw Sherman Sklar, ME, Licensed Psychologist, on May 23, 2006, for a Psychological Evaluation. (Tr. 118-22). Mr. Sklar noted that plaintiff had a large build, was very tall, and did not look his age due to his "extra size." (Tr. 118). Mr. Sklar stated that plaintiff

tended to mumble in responding to interview questions and exhibited a lot of fidgeting behavior. (Id.). He stated that there were several instances where his comments were "completely off the mark," such as when Mr. Sklar was talking to plaintiff's grandmother about his behavior and plaintiff interrupted to ask his grandmother for a dollar. (Id.). Mr. Sklar noted that plaintiff began receiving special education services in the form of resource room support in the second grade. (Tr. 188-119). Mr. Sklar noted that, although plaintiff and his grandmother indicated that plaintiff's school behavior was without problem unless plaintiff is picked on by others, plaintiff's school reports reveal constant disruptive behavior and frequent suspensions. (Tr. 119). Mr. Sklar stated that plaintiff had been seeing a psychiatrist, who prescribes Concerta,[2] since the second grade. (Id.). Plaintiff reported that he is able to focus better and stay in his seat longer after taking his medication, although he still daydreams regularly. (Id.). Mr. Sklar found no evidence of a thought disturbance. (Tr. 120). He stated that plaintiff was hard to understand because of his manner of speaking but the speed at which he spoke was normal and his verbalizations tended to be minimal in terms of imparting information. (Id.). Mr. Sklar stated that plaintiff's affect was without problem. (Id.). Plaintiff had no difficulties with memory or knowledge of current events. (Tr. 121). Mr. Sklar diagnosed plaintiff with ADHD, predominantly inattentive type, with a GAF[3]

---

[2]Concerta is indicated for the treatment of ADHD. See Physician's Desk Reference (PDR), 1928 (59th Ed. 2005).

[3]The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" which does "not include impairment in functioning due to physical (or environmental) limitations." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).

of 52.[4] (Id.). Mr. Sklar expressed the opinion that plaintiff will have a hard time maintaining his focus though medication will help his inattentiveness. (Id.). Mr. Sklar stated that plaintiff showed good respect during the assessment towards the examiner and his grandmother, although it was obviously hard for him to keep his focus on the topics being discussed and he deviated form the discussion inappropriately on several occasions. (Id.). He also noted that, in school, plaintiff is likely to be the target of peers making fun of his excessive size. (Id.).

**C.**     **School Records**

Plaintiff's third-grade teacher, Janice Washington, completed a questionnaire for the SSA. (Tr. 95-101). Ms. Washington rated plaintiff's functioning in the domain of Acquiring and Using Information as follows: an obvious problem in understanding and participating in class discussions, expressing ideas in written form, recalling and applying previously learned material, and applying problem-solving skills in class discussions; and a slight problem in comprehending and following oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and learning new material. (Tr. 95). Ms. Washington noted that plaintiff receives additional Resource assistance with his studies. (Id.). Ms. Washington also stated that plaintiff becomes "very frustrated and agitated" when he is not immediately called on in class discussions, and that this causes "unruly and disruptive" behavior in class. (Id.). Ms. Washington rated plaintiff's functioning in the domain of Attending and

---

[4]A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32.

Completing Tasks as follows: a very serious problem in changing from one activity to another without being disruptive, and working without distracting self or others; a serious problem in waiting to take turns; an obvious problem in carrying out multi-step instructions, and completing work accurately without careless mistakes; a slight problem in paying attention when spoken to directly, sustaining attention during activities, focusing long enough to finish assigned activity, refocusing to task when necessary, organizing own things or school materials, completing assignment, and working at reasonable pace/finishing on time; and no problem in carrying out single-step instructions. (Tr. 96). Ms. Washington stated that plaintiff has difficulty focusing on multi-step instructions and becomes frustrated and agitated. (Id.). She stated that plaintiff frequently disrupts the classroom by hissing at peers and whining throughout the day, especially when things do not go his way. (Id.). Ms. Washington rated plaintiff's functioning in the domain of Interacting and Relating with Others as follows: a very serious problem in playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing anger appropriately, following rules, respecting/obeying adults in authority, and taking turns in a conversation; a serious problem in asking permission appropriately, and interpreting meaning of facial expression or body language; an obvious problem in relating experiences and telling stories, using language appropriate to the situation and listener, and introducing and maintaining relevant and appropriate topics of conversation; and a slight problem in using adequate vocabulary and grammar to express thoughts. (Tr. 97). Ms. Washington indicated that it has been necessary to implement behavior modification strategies including removal from the classroom, time outs, and suspensions. (Id.). Ms. Washington noted that plaintiff also disrespects

authority and adults. (Id.). Ms. Washington found that plaintiff has no problems in the domain of Moving About and Manipulating Objects. (Tr. 98). Ms. Washington rated plaintiff's functioning in the domain of Caring for Himself or Herself as follows: a very serious problem in handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment; a slight problem in taking care of personal hygiene, using good judgment regarding personal safety and dangerous circumstances, and knowing when to ask for help; and no problem in caring for physical needs or cooperating in taking needed medications. (Tr. 99). Ms. Washington noted that plaintiff has no patience and becomes very frustrated when he has to wait his turn to speak or participate in activities. (Id.). She stated that plaintiff has tantrums and blow-ups whereby he walks out of class or throws things. (Id.). Ms. Washington indicated that plaintiff's functioning does not change after he takes his medication. (Tr. 100). She noted that plaintiff is bigger than all the kids in his room. (Id.). Ms. Washington concluded by stating that plaintiff seems to have serious emotional and behavioral concerns that prohibit him from performing appropriately in class. (Tr. 101). Ms. Washington stated that plaintiff's "disruptive, unruly behavior" is a daily concern in a classroom setting. (Id.). She also noted that plaintiff is not on grade level. (Id.).

## The ALJ's Determination

The ALJ made the following findings:

1. The claimant is eleven years old. The claimant has never engaged in substantial gainful activity.

2. The claimant's allegations of disability are not credible.

3. The claimant has the medically determinable impairment of an attention deficit hyperactivity disorder. The record does not document a diagnosis of obesity by a treating physician. However, he is a large boy and so obesity was considered.

4. The claimant has a severe combination of impairments, but he does not have an impairment or combination of impairments that meet or medically equal any appropriate impairment contained within the Appendix 1, Subpart P, Listing of Impairments. The claimant does not have an impairment or combination of impairments that functionally equals the listings.

5. The claimant does not have an impairment, or combination of impairments, which result in marked and severe functional limitations.

6. The claimant has not been disabled, as defined in the Social Security Act, at any time, since protectively filing for Supplemental Security Income Benefits on January 17, 2006.

(Tr. 21).

The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that, based on the application protectively filed for Supplemental Security Income Benefits on January 23, 2006, the claimant is not under disability and consequently is not eligible for Supplemental Security Income Benefits as a child under Sections 1602 and 1614(a)(3)(c) of the Social Security Act.

(Id.).

## Discussion

**A.** **Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

**B.     The Determination of Disability**

A child is considered disabled if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i),(ii). The Commissioner has established a three-step process for determining whether a child is disabled under the Social Security Act. See 20 C.F.R. § 416.924. Under the first step, it is determined whether the child was engaged in substantial gainful activity. If substantial gainful activity is being performed, then a finding of no disability is warranted. See 20 C.F.R. §§ 416.924(b). Next, it is determined whether the child's impairments are severe. See 20 C.F.R. §§ 416.924(c). If a severe impairment is found, the next issue is whether the child's impairment meets or medically equals a listed

impairment found in Appendix One to 20 C.F.R. 404.  See 20 C.F.R. §§ 416.924(d); 20 C.F.R. pt. 404, subpt. P, App. 1.  If it is determined that the impairment does not meet or medically equal a listing, then the final consideration is whether the child's impairment "functionally equals" a listed impairment.  See 20 C.F.R. § 416.924(d).

An ALJ is to evaluate, in determining functional equivalence, a child's functional limitations in: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself/herself, and (6) health and physical well-being.  See 20 C.F.R. § 416.926a (b)(1)(I)-(vi).  A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a(d).

A "marked" limitation is a limitation which is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a (e)(2)(I).  A "marked" limitation can also be "equivalent to standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  Id.

An "extreme" limitation is "more than marked," and is given "to the worst limitations," although it need not necessarily mean a total lack or loss of ability to function.  20 CF.R. § 416.926a(e)(3)(I).

**C.     Plaintiff's Claim on Appeal**

Plaintiff argues that the ALJ failed to fully and fairly develop the record.  Plaintiff contends that the ALJ's determination that plaintiff has less than marked limitations is not, therefore, based

upon substantial evidence.

"[T]he administrative hearing is not adversarial in nature, and the ALJ has a duty to develop facts fully and fairly, especially in a case where the claimant is not represented by counsel." Reeder v. Apfel, 214 F.3d 984, 987 (8th Cir. 2000). An ALJ, however, "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Thus, an absence of counsel "does not in itself deprive a claimant of a fair hearing." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994). The Eighth Circuit Court of Appeals has held that lack of counsel does not affect the validity of an administrative hearing "unless the claimant demonstrates prejudice or unfairness in the proceeding." Heisner v. Secretary of Health, Ed. and Welfare, 538 F.2d 1329, 1331 (8th Cir. 1976). See Cruise v. Harris, 510 F. Supp. 534, 535 n. 2 (W.D. Mo. 1981).

In this case, the evidence in the record is scarce. The medical evidence consists of the report of Mr. Sklar from a one-time psychological evaluation. (Tr. 118-22). The questionnaire completed by plaintiff's third-grade teacher, Ms. Washington, is the only record from plaintiff's school. (Tr. 95-101). The ALJ repeatedly cited the lack of evidence in evaluating the effects of plaintiff's limitations upon his functioning. The ALJ noted on several occasions that the record does not contain "actual school records" documenting poor grades or class observations of poor behavior during performance evaluations. (Tr. 15). The ALJ found that the absence of such documentation failed to enhance the credibility of plaintiff and of Ms. Washington's opinion. (Id.). The ALJ also noted the absence of medical records documenting ongoing treatment and diagnoses. (Tr. 16). The ALJ stated that the absence of such medical records is inconsistent with

plaintiff's allegation of disabling attention deficit hyperactivity disorder. (Id.).

Although the record in this matter is scant, it is apparent that additional evidence exists. Ms. Hollinshed testified that plaintiff sees a psychiatrist at Grace Hill on a monthly basis, who prescribes medication for plaintiff's ADHD. (Tr. 28). Ms. Hollinshed also testified that plaintiff is being treated for asthma. (Tr. 30). In addition, Ms. Hollinshed indicated on written forms that plaintiff had received treatment at Water Tower Health Center, Murphy O'Fallon Health Center, and Cardinal Glennon Hospital. (Tr. 87-90, 109, 115). Further, other than Ms. Washington's questionnaire, plaintiff's school records from Baden Elementary School were not obtained. Rather than obtain this relevant evidence, however, the ALJ cited the lack of evidence as a factor detracting from plaintiff's credibility.

The minimal evidence contained in the record reveals that plaintiff has significant functional limitations due to his ADHD. Mr. Sklar, the only medical source in the record, assessed a GAF of 52 and expressed the opinion that plaintiff would have a difficult time maintaining his focus during school-related activities. (Tr. 121). Ms. Washington's questionnaire indicates that plaintiff has significant difficulties functioning in school. Specifically, Ms. Washington stated that plaintiff becomes frustrated easily, is unruly and disruptive in class, has difficulty following multi-step instructions, and disrespects authority. (Tr. 95-97). Ms. Washington also noted that plaintiff has been removed from the classroom and suspended due to his behavior. (Tr. 97). Plaintiff's behavior during the hearing also reveals that plaintiff has behavioral difficulties. Plaintiff's grandmother and the ALJ both scolded plaintiff on multiple occasions during the hearing due to his behavior.

Not only did the ALJ fail to obtain the necessary medical and school records in this case, but his questioning of Ms. Hollinshed and plaintiff at the hearing was also notably deficient. For example, the ALJ did not question Ms. Hollinshed regarding the type of medication plaintiff took, the side effects of plaintiff's medications, plaintiff's difficulties during school, or plaintiff's daily activities. See Reeder, 214 F.3d at 988 (remanding to Commissioner case in which ALJ failed to "conduct a very probing inquiry" into the factors crucial to a disability determination). Although the ALJ examined plaintiff, he only asked plaintiff what he liked the best and least about school. (Tr. 29). The ALJ then lectured plaintiff extensively about working hard in school so that he could obtain a job and purchase a car and house. (Tr. 29-30). In addition, as plaintiff notes in her brief, the ALJ informed Ms. Hollinshed that she could take the decision to her local SSA office so that it could be explained to her. (Tr. 31-32). The fact that the ALJ apparently questioned Ms. Hollinshed's ability to comprehend the decision is further evidence that the ALJ did not fulfill his duty to ensure that plaintiff received a fair hearing.

In sum, the undersigned finds that the ALJ failed to adequately develop the record and failed to ensure that plaintiff, who was unrepresented, received a fair hearing. The little evidence contained in the record reveals that plaintiff has significant functional limitations due to his ADHD. The ALJ, however, largely relied on the lack of evidence obtained in finding plaintiff not disabled. Plaintiff was, therefore, prejudiced due to the ALJ's failure to develop the record. Thus, the ALJ's determination that M.J. is not disabled is not supported by substantial evidence.

Accordingly, the undersigned recommends that this matter be reversed and remanded to the ALJ in order for the ALJ to order additional medical and school evidence, conduct an

additional hearing during which plaintiff and Ms. Hollinshed are sufficiently questioned regarding plaintiff's functional limitations, and properly assess whether plaintiff's impairments functionally equal a listing level impairment.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that, pursuant to sentence four of 42 U.S.C. § 405 (g), the decision of the Commissioner be **reversed** and this case be **remanded** to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are advised that they have eleven (11) days, until February 20, 2009, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this   9th   day of February, 2009.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE